United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 4, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-70036

DENARD SHA MANNS

Petitioner - Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent - Appellee

Appeal from the United States District Court
for the Western District of Texas, Waco
No. 6:04-CV-00332

Before KING, HIGGINBOTHAM, and GARZA, Circuit Judges.

KING, Circuit Judge:[*]

Petitioner-appellant Denard Sha Manns seeks a certificate of
appealability ("COA") to appeal the district court's judgment
denying his petition for a writ of habeas corpus pursuant to 28
U.S.C. § 2254. Because Manns has not made a substantial showing
of the denial of a constitutional right, we DENY his COA
application.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. BACKGROUND

Manns was indicted in Texas state court for the November 1998 death of Michele Robson. The indictment charged Manns with capital murder and alleged that Manns intentionally caused Robson's death in the course of committing or attempting to commit robbery, kidnapping, and aggravated sexual assault. Manns pleaded "not guilty" and proceeded to a jury trial in February 2002 before the 27th District Court of Bell County, Texas. He was convicted of capital murder on March 1, 2002, and was sentenced to death. Manns appealed his conviction and sentence to the Texas Court of Criminal Appeals, which affirmed. See Manns v. Texas, 122 S.W.3d 171 (Tex. Crim. App. 2003).

On November 10, 2003, Manns filed a state application for a writ of habeas corpus. The 27th District Court of Bell County, Texas, entered findings of fact and conclusions of law and recommended that Manns's application be denied. The Court of Criminal Appeals summarily adopted the trial court's findings and conclusions and denied Manns's application on September 29, 2004. See Ex Parte Manns, No. 59,664-01, slip op. (Tex. Crim. App. Sept. 29, 2004) (per curiam) (unpublished opinion).

Manns filed a federal petition for a writ of habeas corpus in the Western District of Texas on September 29, 2005 and an amended petition on October 14, 2005. The district court denied the petition on April 21, 2006. See Manns v. Dretke, No.

-2-

W-04-CA-332, slip op. (W.D. Tex. Apr. 21, 2006) (unpublished opinion). Manns timely filed a notice of appeal and moved for a COA, but the district court denied Manns's COA request. Manns now seeks a COA from this court to appeal the district court's denial of his habeas petition.

## II. STANDARD OF REVIEW

Manns's petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 §§ 101-108, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (codified as amended at 28 U.S.C. §§ 2244, 2253-2266). Under AEDPA, a state habeas petitioner may appeal a district court's dismissal of his petition only if the district court or the court of appeals first issues a COA. 28 U.S.C. § 2253(c)(1).

A COA will be granted "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). A petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). The court's review of the COA request thus involves performing a threshold inquiry into the merits of the claims in the underlying habeas petition. See id. at 327

-3-

(citing Slack, 529 U.S. at 481).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims.  In fact, the statute forbids it."  Id. at 336.

In determining whether jurists of reason could disagree with the district court's denial of the habeas petition, we must also consider the district court's deferential standard of review under AEDPA.  See Brown v. Dretke, 419 F.3d 365, 371 (5th Cir. 2005) ("With respect to the review of factual findings, AEDPA significantly restricts the scope of federal habeas review.").  Under AEDPA, a federal court must not grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless it determines that the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  "A state court's decision is contrary to Supreme Court precedent if (1) 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law'[] or (2) 'the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court].'" Pippin v. Dretke, 434 F.3d 782, 787 (5th Cir. 2005) (first and third alterations in original) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)), cert. denied, 127

-4-

S. Ct. 351 (2006).  "A state court's decision is an unreasonable application of clearly established federal law whenever the state court identifies the correct governing legal principle from the Supreme Court's decisions but applies that principle to the facts of the prisoner's case in an objectively unreasonable manner." Id. (quoting Young v. Dretke, 356 F.3d 616, 623 (5th Cir. 2004) (internal quotation marks omitted)).  "An unreasonable application may also occur if 'the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'"  Id. (alteration in original) (quoting Young, 356 F.3d at 623).

### III. DISCUSSION

### A. Claims Two and Four: Burden of Proof on Mitigating Factors

#### 1. Background

We first address Manns's second and fourth claims.  Both claims relate to the mitigation special issue submitted to the jury during the sentencing phase of his trial and to the lack of any explicit assignment of a burden of proof on the question.

In accordance with the version of article 37.071, section 2(e)(1) of the Texas Code of Criminal Procedure as it then existed, the jury was asked:

> Do you find from the evidence, taking into consideration all of the evidence,

-5-

> including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances that a sentence of life imprisonment rather than a death sentence be imposed?

See TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(e)(1) (Vernon Supp. 2004) (amended 2005). Although the jury was asked whether there were mitigating factors sufficient to warrant a sentence of life imprisonment rather than death, the jury was not instructed whether the burden of proof on the question was borne by the state or by Manns.

In his second claim, Manns contends that the lack of any burden-of-proof allocation sent "mixed signals" to the jury in violation of Penry v. Johnson (Penry II), 532 U.S. 782 (2001). And in his fourth claim, Manns asserts that under Apprendi v. New Jersey, 530 U.S. 466 (2000), and Ring v. Arizona, 536 U.S. 584 (2002), the state should have been required to prove beyond a reasonable doubt the absence of sufficient mitigating evidence warranting a sentence of life imprisonment.

The state asserts here, as it did before the district court, that Manns did not exhaust these claims in state court. True, Manns raised these claims for the first time in his federal habeas petition; he did not raise them at any point in his original state criminal proceedings or in his state habeas application. Even though Manns failed to exhaust these claims in state court, the district court proceeded to the merits and

-6-

denied the claims. The district court was permitted to deny Manns habeas relief on the merits of his claims notwithstanding his failure to exhaust. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). We perform a threshold inquiry into the merits of Manns's claims to determine whether jurists of reason could disagree with the district court's denial of the claims.

### 2. Claim Two: Penry Claim

Manns asserts that the mitigation special issue sent "mixed signals" to the jury and thereby violated the Eighth Amendment under Penry II. The district court denied Manns's claim, observing that Manns received the instruction required by article 37.071, section 2(e)(1), which does not contain a nullification instruction as prohibited by Penry II.

Manns's claim is not the typical Penry claim—i.e., that the mitigation special issue presented to the jury did not permit the jury to consider and give full effect to Manns's mitigating evidence. See, e.g., Scheanette v. Quarterman, 482 F.3d 815, 824-25 (5th Cir. 2007). Manns does not argue that the jury received mixed signals about how to give full effect to his mitigating evidence. In fact, Manns's COA request does not even identify what mitigating evidence, if any, he presented to the

jury.

Instead, Manns opines that the jury received mixed signals in violation of <u>Penry II</u> because the mitigation special issue did not explicitly allocate the burden of proof on the question. He asserts that the jury's answer to the mitigation special issue may have turned on whether the jury believed it should begin its deliberations with a presumption of a death sentence or a presumption of a sentence of life imprisonment.[1]  In essence,

_____

[1] The heart of Manns's argument is as follows:

> [Under <u>Penry II</u>,] [t]he question here then becomes whether the statutory "mitigation" issue submitted to the jury in this case also suffers from the constitutional flaw of sending "mixed signals."  To pose the question is to answer it, for [the Texas Court of Criminal Appeals] has already acknowledged that the statutory issue is unclear as to the burden of proof. . . .  As discussed above, the practical effect is even worse, as . . . the burden seems to fall on the defense.  Jurors can focus their deliberations on whether a defendant has produced sufficient evidence to convince them a death sentence should not be imposed.  On the other end, jurors could focus on whether the State disproved or rebutted the mitigating evidence produced by the defendant.  Put another way, a juror can begin deliberations with either a presumption that a death sentence is appropriate, or a life sentence is appropriate. A juror's answer may well depend on which presumption he uses, and how he approaches the issue.  With such conflicting interpretations, there is no way for a juror to determine how they should approach answering the issues.  In this situation it is more than probable that jurors may have different views of how the issues should be approached.

-8-

Manns posits that Penry II requires the trial court to instruct the jury regarding which party bears the burden of proof in order to avoid sending prohibited mixed signals.

But Penry II simply does not address which party bears the burden of proof on the mitigation special issue, nor does it require that the burden be assigned to a particular party. Instead, Penry II reaffirmed that the jury must "be able to 'consider and give effect to [a defendant's mitigating] evidence in imposing sentence.'" 532 U.S. at 797 (emphasis omitted) (alteration in original) (quoting Penry v. Lynaugh (Penry I), 492 U.S. 302, 319 (1989)). The Supreme Court held that a judicially crafted nullification instruction did not permit the jury to give full effect to the defendant's mitigating evidence in part because "[a]t best, the jury received mixed signals" from the combination of the nullification instruction and an instruction to follow the oath and the law. See Penry II, 532 U.S. at 802. The district court observed that Manns's jury did not receive a nullification instruction and implicitly concluded that the jury therefore did not receive Penry II's prohibited "mixed signals." Jurists of reason could not disagree with the district court's resolution of Manns's claim, and accordingly we deny Manns's COA request on this claim.

### 3. Claim Four: Apprendi/Ring Claim

Manns also contends that his Fourteenth Amendment due

-9-

process rights were violated because the mitigation special issue implicitly placed the burden of proving sufficient mitigating factors onto Manns. Manns posits that under Apprendi and Ring, the state must bear the burden of proving beyond a reasonable doubt that there are insufficient mitigating circumstances to warrant the imposition of a sentence of life imprisonment rather than death. The district court denied this claim, observing that the same argument has been rejected at both the state and federal level.[2]

In previous cases, we have denied COA applications on this very issue, see Scheanette, 482 F.3d at 828-29, and Rowell v. Dretke, 375-78 (5th Cir. 2005), and for the same reasons we do so in this case as well. Under Apprendi and Ring, the aggravating factors permitting the elevation of the sentence from life imprisonment to death must be found by a jury. See Ring, 536 U.S. at 609. But nothing in Apprendi or Ring addresses mitigating factors. See Ring, 536 U.S. at 597 n.4 ("[Ring] makes no Sixth Amendment claim with respect to mitigating circumstances."). As this court has observed, the absence of mitigating factors need not be proved by the state beyond a reasonable doubt because "a finding of mitigating circumstances reduces a sentence from death, rather than increasing it to

---

[2] The district court cited Russeau v. Texas, 171 S.W.3d 871 (Tex. Crim. App. 2005), Resendiz v. Texas, 112 S.W.3d 541, 549-50 (Tex. Crim. App. 2003), and Resendiz v. Dretke, No. 4:05-CV-1604, 2005 WL 2171890 (S.D. Tex. Sept. 7, 2005) (unpublished opinion).

-10-

death." Granados v. Quarterman, 455 F.3d 529, 536-37 (5th Cir.), cert. denied, 127 S. Ct. 732 (2006). Moreover, the Supreme Court recently made clear that its decision in Walton v. Arizona, 497 U.S. 639 (1990), that "a state death penalty statute may place the burden on the defendant to prove that mitigating circumstances outweigh aggravating circumstances," is still controlling. Kansas v. Marsh, 126 S. Ct. 2516, 2524 (2006). Jurists of reason could not disagree with the district court's resolution of this claim. Accordingly, Manns's request for a COA on this claim is denied.

## B. Claim 1: Lack of Juror Unanimity on Manner of Committing Capital Murder

We turn next to Manns's first claim. Manns contends that his Fourteenth Amendment right of due process and his Sixth Amendment right of trial by jury were violated because the trial court did not require the jury to unanimously agree whether the offense elevating murder to capital murder was robbery, kidnapping, or aggravated sexual assault.[3] Manns first presented this claim in his state habeas application.[4] The Court of

---

[3] Although Manns's first claim is predicated on both the Fourteenth Amendment and the Sixth Amendment, the right of juror unanimity "is more accurately characterized as a due process right than as one under the Sixth Amendment." Schad v. Arizona, 501 U.S. 624, 634 n.5 (1991) (plurality opinion).

[4] The state contends that Manns did not exhaust his state remedies on this claim. But in his state habeas application, Manns asserted that his constitutional rights of due process and

-11-

Criminal Appeals rejected Manns's argument, relying on <u>Kitchens v. Texas</u>, 823 S.W.2d 256 (Tex. Crim. App. 1991).[5] Manns again presented the argument in his federal habeas petition. The federal district court also relied on <u>Kitchens</u> in rejecting Manns's argument. Manns now seeks a COA on this claim.

The indictment charged Manns with capital murder, which was defined in 1998 in relevant part as "intentionally commit[ting] . . . murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, or obstruction or retaliation." TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 1998) (amended 2003). The indictment alleged that Manns "caus[ed] the death of an individual, namely, MICHELE ROBSON, by shooting the said MICHELE ROBSON with a firearm . . . in the course of committing or attempting to commit the offense[s] of kidnapping[,] . . . robbery[,] . . . [and] aggravated sexual assault of the said MICHELE ROBSON." The state trial court instructed the jury:

> [I]f you believe from the evidence beyond a
> reasonable doubt, that the defendant, DENARD

---

trial by jury were violated because the jury instructions "did not require all twelve jurors to agree on whether the aggravating factor elevating murder to capital murder was kidnapping, robbery[,] or aggravated sexual assault." Consequently, Manns fairly presented this claim to the state courts and therefore exhausted his state remedies. We thus proceed with a threshold inquiry into the district court's resolution of his claim.

[5] The Court of Criminal Appeals did so indirectly by summarily adopting the findings and conclusions of the state district court, which relied on <u>Kitchens</u>.

-12-

> MANNS, . . . intentionally commit[ted] murder by causing the death of an individual, namely, MICHELE ROBSON, by shooting the said MICHELE ROBSON with a firearm, and
>
> (1) the defendant was then and there in the course of committing or attempting to commit the offense of kidnapping of the said MICHELE ROBSON; or
>
> (2) . . . robbery of the said MICHELE ROBSON; or
>
> (3) . . . aggravated sexual assault of the said MICHELE ROBSON,
>
> you will find the defendant guilty of the offense of Capital Murder . . . .

The jury reported on a general verdict form its finding that Manns was "guilty of the offense of Capital Murder as alleged in the indictment."

Manns argues that his constitutional rights were violated because the jury was not required to unanimously agree on which aggravating offense (i.e., kidnapping, robbery, or aggravated sexual assault) elevated his crime to capital murder. The thrust of Manns's argument is that the aggravating offenses enumerated in section 19.03(a)(2) are separate elements of the offense of capital murder, not merely alternate means of committing capital murder. As such, Manns contends, the jury should not have been permitted to find him guilty of capital murder without agreeing unanimously on at least one particular offense enumerated in section 19.03(a)(2).

In Schad v. Arizona, 501 U.S. 624 (1991), a plurality of the

-13-

Supreme Court "concluded that when a statute enumerates alternative routes for its violation, whether jurors must be unanimous with respect to a particular route depends on two questions." United States v. Edmonds, 80 F.3d 810, 815 (3d Cir. 1996) (en banc). The first question involves an inquiry into legislative intent: "[D]id the legislature intend the different routes to establish separate 'offenses,' for which unanimity is required as to every fact constituting the offense, or different 'means' of violating a single offense, for which unanimity is not required?" Id.; see also Schad, 501 U.S. at 636-37 (plurality opinion). The second inquiry is constitutional in nature: "[I]f the legislature intended the alternative routes to be mere means of violating a single statute, is the statute's definition of the crime unconstitutional under the Due Process Clause?" Edmonds, 80 F.3d at 815; see also Schad, 501 U.S. at 632 (plurality opinion).

In Kitchens, the Texas Court of Criminal Appeals answered the first Schad question with regard to the crime of capital murder in Texas. The Kitchens court determined that the offenses enumerated in section 19.03(a)(2) do not establish separate elements but rather are merely "differing methods of committing one offense." 823 S.W.2d at 257-58. The court explicitly condoned the use of a general verdict in a capital-murder trial, whereby the jury need not be unanimous as to which of the enumerated offenses elevates murder to capital murder. Id.

-14-

Manns contends, however, that Kitchens was wrongly decided. He criticizes the perceived lack of thoroughness in Kitchens's analysis, contending that the Court of Criminal Appeals did not perform a sufficient inquiry into the Texas legislature's intent as contemplated by Schad and Richardson v. United States, 526 U.S. 813 (1999). He maintains that the Kitchens court instead simply "declare[d], essentially by judicial fiat, that any alternative theories of commission of an offense as defined within a single penal statute will invariably and always be regarded as nothing more than 'means' of satisfying the elements of the statute." He argues that a proper inquiry into legislative intent yields the conclusion that the Texas legislature intended for section 19.03(a)(2) to create separate elements, not merely to provide alternative methods for committing a single crime. He relies primarily on the statute's language, but he also argues that even if the statute is ambiguous, there should essentially be a presumption that the statute creates separate elements. Finally, Manns opines that Kitchens no longer represents the view of the Texas courts. He argues that the Court of Criminal Appeals revisited the issue of juror unanimity in Ngo v. Texas, 175 S.W.3d 738 (Tex. Crim. App. 2005), and that Ngo's rationale supports a conclusion that section 19.03(a)(2) enumerates elements of capital murder, not

-15-

merely manner and means of proving a single element.[6]

But in construing the Texas legislature's intent, a federal habeas court is bound by the statutory interpretation set forth by the Texas court. By rejecting Mann's claim and relying on Kitchens, the Court of Criminal Appeals effectively determined that under Texas law, robbery, kidnapping, and aggravated sexual assault are simply alternate means of committing the crime of capital murder. Cf. Schad, 501 U.S. at 637 (plurality opinion) ("In the present case, for example, by determining that a general verdict as to first-degree murder is permissible under Arizona law, the Arizona Supreme Court has effectively decided that, under state law, premeditation and the commission of a felony are not independent elements of the crime, but rather are mere means of satisfying a single mens rea element."). On habeas review, the district court is not permitted to second-guess the Texas

---

[6] Manns also asserts that the Court of Criminal Appeals specifically held in Rodriquez v. Texas, 146 S.W.3d 674 (Tex. Crim. App. 2004), that the alternative theories of capital murder enumerated in section 19.03(a)(2) do in fact constitute elements of the offense. The Rodriquez court did state that the offense of capital murder includes "aggravating 'nature of circumstances and/or nature of conduct elements' [that] are elements of the offense." 146 S.W.3d at 677. But the court appears to have been recognizing simply that in a capital-murder case the state must——in addition to proving that the defendant intentionally caused an individual's death——also prove "that the accused engaged in other criminal conduct (i.e., kidnapping, robbery, aggravated sexual assault, escape from a penal institution) or had knowledge of certain circumstances (i.e., that the victim was a peace officer)." Id. (quoting Patrick v. Texas, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995)). The Rodriquez court did not state that it was in any way modifying or overruling Kitchens.

-16-

court's interpretation of Texas law but must instead respect it as controlling. See id. at 636 (plurality opinion) ("If a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law." (citing Mullaney v. Wilbur, 421 U.S. 684, 690-91 (1975); Murdock v. City of Memphis, 87 U.S. 590 (1875))). In disposing of Manns's due process claim, the district court respected Kitchens as controlling, and jurists of reason could not disagree with that resolution of Manns's claim.[7] Accordingly, we deny his request for a COA on this claim.

## C. Claim 3: Ineffective Assistance of Counsel

Lastly, Manns claims that he received ineffective assistance of counsel. He argues that his appellate counsel provided constitutionally deficient assistance by failing to raise on direct appeal the issue of the lack of juror unanimity as to which enumerated offense elevated murder to capital murder, even though this issue had been preserved in the trial court.[8] Manns

---

[7] Manns did not go on to argue in the district court (and does not argue here) that under Schad's second prong, Texas's definition of capital murder, as construed by the Court of Criminal Appeals, violates due process. Hence, we do not address it.

[8] Manns made other arguments in his state and federal habeas petitions about the effectiveness of his appellate counsel. But

-17-

presented this claim in both his state habeas application and in his federal habeas petition.

Manns's ineffective-assistance-of-counsel claim is governed by Strickland v. Washington, 466 U.S. 668 (1984). See Smith v. Robbins, 528 U.S. 285 (2000). Under the Strickland standard, Manns must show that his appellate counsel's performance was objectively unreasonable and that it prejudiced him. See id. To establish prejudice, Manns must demonstrate a reasonable probability that absent his appellate counsel's unreasonable performance he would have prevailed on appeal. See id. at 285-86.

Manns has not shown that jurists of reason could disagree with the district court's denial of his claim of ineffective assistance of counsel. Assuming arguendo that Manns's appellate counsel's failure to present the juror-unanimity argument on direct appeal was objectively unreasonable, Manns cannot demonstrate prejudice. As we explained above, Manns has not made a substantial showing that the trial court's failure to require the jury to be unanimous on which offense elevated murder to capital murder deprived him of a constitutional right. As a result, he has also failed to demonstrate prejudice——i.e., a reasonable probability that had his appellate counsel made the juror-unanimity argument, he would have prevailed on direct

he does not address these arguments in his COA request.

-18-

appeal.  Consequently, Manns's request for a COA on this claim is denied as well.

## IV. CONCLUSION

For the foregoing reasons, Manns's request for a COA is DENIED.

EMILIO M. GARZA, Circuit Judge, specially concurring:

I concur in the majority opinion but write separately to voice concern that *Kitchens* was wrongly decided.  Under both of *Schad*'s inquiries—statutory construction of Texas's capital murder statute and due process—the specific felony offense elevating murder to capital murder is a separate *element* of the crime of capital murder, not, as the Texas Court of Criminal Appeals has held, a "differing method[] of committing one offense."  *Kitchens v. Texas*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991); *see* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 1998) (amended 2003).

The distinction between the *elements* of a crime and the *means* of committing an element of a crime is often less than clear, but Texas's capital murder statute is straightforward.  To commit capital murder, a defendant must not only have the requisite *actus reas* and *mens rea* of murder, but he also must commit a felony that is, in and of itself, a separate crime, which comes with its own *actus reas* and *mens rea* requirements. *See, e.g.*, TEX. PENAL CODE ANN. § 20.03(a) (kidnaping); *Id.* § 29.02(a) (robbery); *Id.* § 22.021(a) (aggravated sexual assault). The act of committing kidnaping, or robbery, or aggravated sexual assault is not an alternate means by which one commits capital murder.  Means are "preliminary factual issues which underlie the

-20-

verdict," *Schad v. Arizona*, 501 U.S. 624, 631-32 (1991) (internal quotations omitted), and consist of alternate theories in the commission of an element of the offense—for example, using a gun versus using a knife in committing aggravated sexual assault. The *mens rea* element can also be established by various means, for example, committing murder that is premeditated or an act of passion. Here, however, the underlying felony offense is a separate crime in and of itself, which, if its elements are proved beyond a reasonable doubt, elevates murder to capital murder and hence is an element of the crime of capital murder. *Cf. Richardson v. United States*, 526 U.S. 813, 817-19 (1999); *Apprendi v. New Jersey*, 530 U.S. 466, 496 (2000) ("[T]he fact that New Jersey . . . has also made precisely the same conduct the subject of an independent substantive offense" is probative as to whether the conduct is an element of the crime). I concur in denying COA because we are required under *Schad* to defer to Texas's own interpretation of its capital murder statute.

Moreover, although I agree with the majority that Manns waived any argument under *Schad*'s second prong that Texas's definition of capital murder, as construed by the Texas Court of Criminal Appeals, violates due process, I am not confident that *Kitchens* can survive a due process analysis. For one, proving the specific underlying felony offense as a separate element of the crime makes a difference where, as here, the Government

introduced evidence that the defendant committed more than one felony offense. By combining alternative theories of guilt, the prosecutor may have managed to convict Manns without proving beyond a reasonable doubt all of the elements of any one theory to a constitutionally adequate number of jurors. *See Richardson*, 526 U.S. at 819 (expressing concern with "increas[ing] the likelihood that treating violations simply as alternative means, by permitting a jury to avoid discussion of the specific factual details of each violation, will cover up wide disagreement among the jurors about just what the defendant did, or did not, do."). Moreover, *Kitchens* does not construe the elements of capital murder to that level of specificity required by the Constitution. *See Schad*, 501 U.S. at 632-33 ("require[ing] proof some specific illegal conduct"). "[N]othing in our history suggests that the Due Process Clause would permit a state to convict anyone under a charge of 'Crime' so generic that any combination of jury findings of embezzlement, reckless driving, murder, burglary, tax evasion, or littering, for example, would suffice for conviction." *See Schad*, 501 U.S. at 634. I fear that, under *Kitchens,* Texas's capital murder statute, by allowing a combination of jury findings of kidnaping, robbery, or sexual assault, may be such an unconstitutional crime.

-22-