# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 27, 2009

Charles R. Fulbruge III
Clerk

No. 08-70006

JONATHAN MARCUS GREEN

Petitioner-Appellant

v.

NATHANIEL QUARTERMAN,
Director, Texas Department of Criminal Justice,
Institutional Division, Respondent-Appellee

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas, Houston
USDC No. H-07-827

Before WIENER, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Petitioner Jonathan Marcus Green, ("Green"), convicted of capital murder in Texas and sentenced to death, requests this Court to issue a Certificate of Appealability (COA) pursuant to 28 U.S.C. § 2253(c)(2). Green contends that his due process rights were violated at his trial because the instructions did not require the jury to unanimously determine which underlying felony it used to find that he committed capital murder. He also contends that his counsel

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

rendered ineffective assistance by failing to object to the allegedly unconstitutional instructions. Finally, he contends that he is incompetent to be executed. Finding that Green has not made a substantial showing of the denial of a constitutional right, we DENY a COA. We DISMISS his claim of incompetency without prejudice because it is not yet ripe.

## I. PROCEDURAL HISTORY

A Montgomery County, Texas grand jury returned an indictment charging Green with committing the intentional murder of 12 year-old Christina Neal while in the course of kidnaping and/or aggravated sexual assault. Tex. Penal Code § 19.03(a)(2).[1] A jury convicted Green as charged, and the sentence imposed was the death penalty. The Texas Court of Criminal Appeals affirmed Green's conviction in an unpublished opinion. *Green v. State,* No. AP-74398 (Tex. Crim. App. Dec. 1, 2004), *cert. denied*, 547 U.S. 1005 (2006). Green applied for state habeas relief, and the trial court recommended denying relief. The Court of Criminal Appeals adopted the findings and conclusions of the trial court and denied the application. *Ex parte Green*, No. 61,225-01 (Tex. Crim. App. Mar. 23, 2005). Green then filed a federal petition for writ of habeas corpus, which the district court denied in a memorandum opinion and order. *Green v. Quarterman*, No. 4:07-CV-827, 2008 WL 442356 (S.D. Tex. Feb. 15, 2008). The district court also denied a COA. Green now requests a COA from this Court.

## II. STANDARD OF REVIEW

Green filed his 28 U.S.C. § 2254 petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). The petition, therefore, is subject to AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Pursuant to the federal habeas statute, as amended by AEDPA, we defer to a state court's adjudication of a petitioner's claims on the merits

---

[1] Because resolving the claims presented in this COA does not require knowledge of the facts underlying the offense of capital murder, we do not recite them here.

unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 404–08 (2000). A state court's decision constitutes an unreasonable application of clearly established federal law if it is "objectively unreasonable." *Id.* at 409. Further, pursuant to section 2254(e)(1), state court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001).

Additionally, under AEDPA, a petitioner must obtain a COA before he can appeal the district court's denial of habeas relief. *See* 28 U.S.C. § 2253(c); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners."). As the Supreme Court has explained:

> The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable among jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it.

*Miller-El*, 537 U.S. at 336.

A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327 (citation omitted). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 342. "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338. Moreover, "[b]ecause the present case involves the death penalty, any doubts as to whether a COA should issue must be resolved in [petitioner's] favor." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000) (citation omitted).

III.   ANALYSIS

A.    Jury Charge

Green argues that his due process rights were violated because the instructions did not require the jury to *unanimously* determine which underlying felony it used to find that he committed capital murder.[2] At Green's trial, the jury instructions provided that it could convict him of capital murder if it found that he intentionally murdered the victim in the course of committing or attempting to commit either (1) the offense of kidnaping or (2) the offense of sexual assault.

This claim is controlled by the Supreme Court's plurality opinion in *Schad v. Arizona,* and this Court's subsequent precedent applying *Schad.* 501 U.S. 624

---

[2] Green also raises this issue as a Sixth Amendment violation. However, the right to a unanimous verdict "is more accurately characterized as a due process right than as one under the Sixth Amendment." *Schad v. Arizona*, 501 U.S. 624, 634 n.5 (1991) (plurality opinion).

(1991) (plurality). In *Schad*, the jury was charged with the alternative theories of premeditated murder or felony murder. 501 U.S. at 630. The petitioner contended that the instructions' failure to require the jury to unanimously agree whether he committed premeditated or felony murder violated his constitutional rights. *Id.* The Supreme Court explained that the relevant inquiry was not one of jury unanimity inasmuch as the jury *had* unanimously determined that the State had proved what it was required to prove pursuant to state law. *Id.* at 630–31. Instead, the "petitioner's real challenge [was] to Arizona's characterization of first degree murder as a single crime as to which a verdict need not be limited to any one statutory alternative." *Id.* The relevant inquiry therefore was whether Arizona's definition of capital murder ran afoul of the Constitution. *Id.* at 631.

To resolve this issue, the opinion first looked to whether the legislature intended to create separate offenses or different means of committing a single offense. *Id.* at 636–37. The opinion explained that if the state court had interpreted the statute and determined that the alternatives are means of committing a single offense, federal courts "are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law." *Id.* at 636. The Arizona Supreme Court previously had determined that premeditation and felony murder were not separate elements but instead were means of "satisfying a single *mens rea* element." *Id.* at 637.

The next question posed by the opinion was whether Arizona's definition of the crime as a single offense violated due process. The plurality opinion expressly refused to formulate a "single test for the level of definitional and verdict specificity permitted by the Constitution." *Id.* at 637. Instead, the plurality opined that "our sense of appropriate specificity is a distillate of the concept of due process with its demands for fundamental fairness, [citation

omitted], and for the rationality that is an essential component of that fairness." *Id*. at 637. The plurality explained that it would "look both to history and wide practice as guides to fundamental values, as well as to narrower analytical methods of testing" to determine whether the alternative mental states may permissibly "satisfy the *mens rea* element of a single offense." *Id*. at 637. After analyzing various state court precedents, the opinion found considerable historical evidence supporting Arizona's use of alternative mental states as means to satisfy the *mens rea* element of a single offense. The opinion further found that it could reasonably be concluded that the two mental states were moral equivalents. *Id*. at 644. Ultimately, the opinion held that the jury instructions did not violate due process. *Id*. at 645.

Green acknowledges the holding in *Schad* but nonetheless asserts that Justice Scalia's concurring opinion cast considerable doubt on the plurality's reasoning. Green further asserts that Justice Scalia's concurrence, which was narrowly based on historical grounds, effectively limited *Schad* either to its facts or to cases in which the jury is charged with the alternative mental states of premeditation and felony murder. Our precedent belies this assertion.

In *Reed v. Quarterman*, the petitioner sought a COA based on his claim that "allowing the jury to convict him under two alternative theories without requiring unanimity as to one" violated due process. 504 F.3d 465, 479 (5th Cir. 2007). Reed's jury had been instructed that it could convict him of capital murder if it found that he committed murder in the course of robbery or attempted robbery or in the course of attempted aggravated rape. *Id*. Reed argued that *Schad* did not apply because his jury charge actually described two separate offenses as opposed to two different means of committing the single offense of murder. *Id*. at 480. Applying *Schad*, this Court recognized that "numerous states have traditionally defined and continue to define first-degree or aggravated murder as including both a killing in the course of robbery and a

killing in the course of rape or attempted rape." *Id*. at 482. In fact, the Arizona statute at issue in *Schad* did so. *Id*. We further concluded that courts "could reasonably find a moral equivalence between murder in the course of robbery and murder in the course of attempted rape." *Id*. Thus, we denied a COA, holding that reasonable jurists would not debate that the state court "reasonably applied *Schad* when it rejected Reed's challenge to his jury instructions." *Id*. In view of this Court's precedent applying the plurality's reasoning, Green is precluded from demonstrating that whether *Schad* applies is debatable among jurists of reason.[3]

Green also argues that the Supreme Court overruled *Schad* in *Ring v. Arizona*, 536 U.S. 584 (2002). In *Ring*, the Supreme Court held that the Sixth Amendment right to jury trial was violated when a trial judge determines the presence of aggravating circumstances that are necessary for the imposition of the death penalty. In the instant case, however, the jury, not the trial judge, made the findings necessary for imposition of the death penalty. Also, *Ring* involved a Sixth Amendment challenge, and, as previously noted, the right to a unanimous verdict, which is Green's claim, "is more accurately characterized as a due process right than as one under the Sixth Amendment." *Schad*, 501 U.S. at 634 n.5. Moreover, as discussed above, this Court has applied *Schad* subsequent to the Supreme Court's holding in *Ring*. Indeed, in *Manns,* although this Court was well aware of *Ring,* it applied *Schad* to the jury unanimity claim.[4]

---

[3] Green does not contend in the alternative that, if *Schad* applies, he has shown a substantial denial of a federal right. In any event, this Court has rejected this precise claim. *See Manns v. Quarterman*, 236 F. App'x 908 (5th Cir. 2007) (applying *Schad* to determine that the underlying offenses of robbery, kidnaping, or aggravated sexual assault were not separate elements of the Texas capital murder statute).

[4] This Court discussed *Ring* in analyzing the petitioner's claim that the mitigation issue unconstitutionally shifted the burden of proof. *Manns*, 236 F. App'x at 913.

Tellingly, *Ring* does not cite to *Schad*, much less indicate that *Schad* is overruled. Instead, in *Ring*, the Supreme Court expressly "overrule[d] *Walton* [*v. Arizona*, 497 U.S. 639 (1990)] to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." 536 U.S. at 609. Thus, we are not persuaded that Green has shown that it is debatable among jurists of reason whether *Ring* overruled *Schad*. We deny Green's request for a COA on this claim.

### B. Ineffective Assistance of Counsel

Green contends that his trial counsel rendered ineffective assistance by failing to object to the above-challenged jury instruction. The Respondent contends that this claim is unexhausted. Although AEDPA allows federal courts to deny relief on an unexhausted claim, we cannot grant relief unless the State affirmatively waives the exhaustion requirement. *See Mercadel v. Cain*, 179 F.3d 271, 276–77 (5th Cir. 1999); § 2254(b)(2) & (3). Nonetheless, we need not reach the question of exhaustion because, as explained below, we have no jurisdiction over the claim due to Green's failure to raise this particular claim in the district court.

The Respondent also claims that because Green did not seek a COA before the district court on this particular ground of ineffective assistance of counsel, this Court is without jurisdiction to reach it. We agree. "Compliance with the COA requirement of 28 U.S.C. § 2253(c) is jurisdictional, and the lack of a ruling on a COA in the district court causes this court to be without jurisdiction to consider the appeal." *Sonnier v. Johnson,* 161 F.3d 941, 946 (5th Cir. 1998); *Thompson v. Quarterman*, 292 F. App'x 277 (5th Cir. 2008) (explaining that this Court lacked jurisdiction to consider petitioner's request for a COA with respect to a different claim of ineffective assistance that had not been presented to the district court).

In any event, even if we were to consider the instant claim of ineffective assistance to have been sufficiently raised before the district court, we would deny a COA. To establish ineffective assistance of counsel, Green must show (1) defense counsel's performance was deficient and (2) this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). While "[j]udicial scrutiny of counsel's performance must be highly deferential," Green can demonstrate deficient performance if he shows "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688–89. However, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Webster*, 392 F.3d 787, 793 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689). *Strickland*'s "prejudice" prong requires a reasonable probability that, but for the deficient performance of his trial counsel, the outcome of his capital murder trial would have been different. 466 U.S. at 694.

With respect to the first prong, Green has not shown that counsel's performance was deficient. As discussed above, the jury charge was not constitutionally infirm and therefore this objection would have been without merit. The failure to make meritless objections does not constitute deficient performance. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). With respect to the second prong, Green is precluded from showing prejudice. In *Reed,* the petitioner's trial counsel did make this objection to the jury charge at trial. 504 F.3d at 480 n.6. Nonetheless, as previously set forth, this Court denied a COA on the claim that the jury instruction was constitutionally infirm. Thus, Green is precluded from showing that, but for counsel's failure to object, there is a reasonable probability of a different outcome at trial.

### C.    Competency to be Executed

Green's counsel asserts that Green is incompetent to be executed because he has shown signs of severe psychosis. Nevertheless, Green's counsel

acknowledges that this claim is not yet ripe because the State of Texas has not set an execution date. We therefore dismiss this claim without prejudice. *See Panetti v.Quarterman*, 127 S.Ct. 2842, 2852 (2007); *ShisInday v. Quarterman*, 511 F.3d 514, 521–22 (5th Cir. 2007), *cert. denied*, 129 S.Ct. 62 (2008).

IV.    CONCLUSION

We DENY a COA with respect to Green's challenge to the jury instructions and ineffective assistance of counsel. We DISMISS Green's claim that he is incompetent to be executed without prejudice.