# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 9, 2012

Lyle W. Cayce
Clerk

No. 12-70031

JONATHAN MARCUS GREEN,

Petitioner - Appellee

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellant

Appeal from the United States District Court for the
Southern District of Texas, Houston

Before KING, CLEMENT, and OWEN, Circuit Judges.

KING, Circuit Judge:

Petitioner Jonathan Marcus Green was convicted of capital murder and sentenced to death in Texas state court on July 17, 2002. Petitioner challenged in state court his competency to be executed. A competency hearing was held on June 28, 2010. Petitioner testified and presented expert testimony as well as voluminous medical records. Respondent stipulated to the accuracy of these records and that any fact witnesses called in support would testify consistent with those records. The state court issued a ruling from the bench finding Petitioner competent. The state court specifically found that Petitioner knew he was "to be executed by the State," knew he was "convicted of killing the victim,"

No. 12-70031

knew "the execution date," and demonstrated "a rational understanding of [his] imminent date." The Texas Court of Criminal Appeals affirmed on June 27, 2012. An execution date was then set on August 14, 2012, scheduling Petitioner's execution for October 10, 2012. On September 28, 2012, Green filed a motion in the district court pursuant to 28 U.S.C. §§ 2241 and 2254, seeking a stay of execution. On October 8, 2012, the district court, in *Green v. Thaler*, No. H-07-827, granted Petitioner's motion to stay execution. The district court ruled that the state proceeding violated due process by failing to allow Petitioner to call forth fact witnesses who would testify as to his medical records, and by failing to apply the proper constitutional standards, all in contravention of *Panetti v. Quarterman*. We find no basis in *Panetti* or elsewhere for the district court's holding that a competency hearing at which Petitioner testified and both Petitioner and Respondent introduced expert testimony, including medical records stipulated as accurate, violates the due process clause. We also find no basis for concluding that the state court's decision that Petitioner was competent to be executed was contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court. Finally, we find that Petitioner has failed to present clear and convincing evidence to rebut the presumption in favor of upholding the state court's competency finding. Accordingly, we vacate the district court's stay of execution and remand with instructions to dismiss the petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jonathan Marcus Green was convicted of the capital murder of 12-year old Christina Neal and sentenced to death in the 221st District Court of Montgomery County, Texas on July 17, 2002.[1] Green's conviction was affirmed

---

[1] A full recitation of the facts underlying Green's offense is provided in the district court's decision addressing Green's original federal habeas petition. *See Green v. Quarterman*, No. H-07-827, 2008 WL 442356, at *1-*3 (S.D. Tex. Feb. 15, 2008).

2

No. 12-70031

by the Texas Court of Criminal Appeals ("CCA"). *Green v. State*, No. AP-74398, 2004 WL 3094650 (Tex. Crim. App. Dec. 1, 2004) (not designated for publication), *cert. denied sub nom. Green v. Texas*, 547 U.S. 1005 (2006). Following the denial of certiorari, Green filed a state application for habeas relief. The CCA denied post-conviction relief.

Green next filed a federal habeas petition in the United States District Court for the Southern District of Texas. *Green v. Quarterman*, No. H-07-827, 2008 WL 442356 (S.D. Tex. Feb. 15, 2008). Among the numerous claims Green raised in his petition was a claim that he was incompetent to be executed and mentally retarded. *Id.* at *5. The district court dismissed his competency claim as unripe and denied relief on all other claims. *Id.* at *8, *15. Green sought a certificate of appealability ("COA") from this court on June 16, 2008. That request was denied on February 27, 2009. *Green v. Quarterman*, 312 F. App'x 635 (5th Cir. 2009) (unpublished). We rejected Green's argument that his due process rights were violated because the jury charge did not require that jurors unanimously determine under which of two underlying felonies he committed capital murder. *Id.* at 637-40. We similarly denied a certificate of appealability on Green's ineffective assistance of counsel claim. *Id.* at 640-41. Finally, as did the district court, we dismissed, without prejudice, Green's claim of mental incompetence as unripe because no execution date had been set. *Id.* at 641. The United States Supreme Court denied certiorari on October 5, 2009. *Green v. Thaler*, 130 S. Ct. 373 (2009).

On December 16, 2009, the state court signed the death warrant and set the execution date for June 30, 2010. On June 1, 2010—five and one half months later—represented by the same counsel as represented him in his earlier habeas petition (and as continues to represent him), Green filed a motion seeking appointment of counsel, funding for retention of a mental health expect, and an evidentiary hearing. The state court granted Green's motion in part.

No. 12-70031

The court appointed counsel and approved funding to retain Dr. Diane Mosnik, an assistant professor of psychiatry and neurology. But the court did not, at that time, schedule an evidentiary hearing. Green's expert, Dr. Mosnik, and the State's expert, Dr. Mark Moeller, submitted their reports on June 21, 2010. Green then filed a second state petition for writ of habeas corpus on June 23, 2010 pursuant to Article 11.071 of the Texas Code of Criminal Procedure and sought a competency determination under Article 46.05. In his petition, Green again argued that he was incompetent to be executed and asked for a competency hearing. That same day, the state court scheduled a competency hearing for June 28, 2010.

Following the June 28, 2010 competency hearing, the state court found Green sufficiently competent to be executed. On the State's motion, the CCA reviewed the state court's decision and stayed Green's execution on June 30, 2010. The appellate court determined that it required clarification from the state court as to what standard the court used during the competency hearing, because some of the standards the judge referenced to assess Green's competency were inapplicable to that proceeding. *Ex parte Green*, No. AP-76,374, 2010 Tex. Crim. App. Unpub. LEXIS 407 (Tex. Crim. App. June 30, 2010) (not designated for publication).[2] The CCA received the state court's clarification that it had relied on the Article 46.05 standard on July 14, 2010. (Pet'r's Ex. G.)

On July 2, 2010, after learning that the state court judge had solicited, *ex parte*, a proposed order from the State following the competency hearing, Green moved for the judge's recusal under Rule 18a of the Texas Rules of Civil Procedure. The regional presiding judge held a hearing on that motion on July

---

[2] On June 30, 2010, the CCA also instructed Green and the State to file briefs addressing whether claims of incompetency to be executed can be brought in a habeas petition under Article 11.071 or must be brought under Article 46.05 of the Texas Code of Criminal Procedure.

4

No. 12-70031

12, 2010, and denied it. Green filed a notice of appeal as to this denial on July 19, 2010.

On June 27, 2012, the CCA issued a decision consolidating and addressing the three issues Green raised in the state court proceeding below: 1) whether competency claims in death penalty cases are cognizable on a petition for a writ of habeas corpus; 2) whether the state court erred in finding Green competent; and 3) whether Green's motion for recusal of the state court judge for allegedly inappropriate *ex parte* communications was properly denied. *Green v. State*, Nos. AP-76,374, AP-76,376, AP-76,381, 2012 WL 2400651 (Tex. Crim. App. June 27, 2012). As to the first issue, the appellate court held that Article 46.05 satisfied due process and that a habeas petition under Article 11.071 could not substitute for a direct appeal under Article 46.05. *Id.* at *3-*4. The appellate court further held that Article 46.05 was constitutional under *Panetti*. *Id.* at *4. As to the second issue, the appellate court determined that the state court had applied the correct legal standard in finding Green competent. *Id.* at *7. The appellate court then reviewed the state court's decision for abuse of discretion, and denied Green's claim of error. *Id.* The appellate court also denied Green relief on the third issue, holding that Green's recusal motion was properly denied because: 1) the state court judge's recusal could not influence Green's Article 46.05 appeal, 2) the appellate court lacked jurisdiction, and 3) the regional presiding judge's denial of Green's motion was not an abuse of discretion. *Id.* at *7-*9.

On September 28, 2012, Green filed a motion for stay of execution in district court, arguing that the state competency proceeding did not afford him adequate due process, the standards applied by the state court to assess his competency were clearly erroneous, and his present mental state requires an "opportunity and expert resources necessary to properly present and explain the significance of his condition in a federal writ of habeas corpus." The district

No. 12-70031

court granted Green's motion for a stay on October 8, 2012, finding that the state court 1) prevented Green from presenting testimony principally by the Texas Department of Criminal Justice ("TDCJ") mental health professionals who authored the records submitted at the hearing and stipulated to by the State; 2) signed an order drafted by the State to which Green had no opportunity to object; and 3) applied at least one incorrect legal standard in assessing Green's competency. *Green v. Thaler*, No. H-07-827 (S.D. Tex. Oct. 8, 2012). The district court held that this resulted in a denial of Green's due process rights, led the state court to make an unreasonable determination of the facts, and constituted an unreasonable application of Supreme Court precedent. A status conference was scheduled for October 18, 2012.

## II. DISCUSSION

### A.   Jurisdiction

Before considering the district court's decision to grant Green a stay we must address the State's argument that the district court lacked jurisdiction to issue the stay because no habeas petition was pending before it. 28 U.S.C. § 2251 provides that a "judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court." The State asserts that no habeas petition was pending before the district court. We disagree.

On June 30, 2010, the district court granted Green's Motion for Stay and Abeyance of his pending federal habeas petition. The district court's order stayed Green's petition pending resolution of Green's incompetency claim by the state courts. The district court's October 8, 2012 stay was entered in that case.

Further, Green's current motion for a stay of execution specifically relied on 28 U.S.C. §§ 2241 and 2254. (Pet'r's Dist. Ct. Br. at 2.) Green also stated that he sought habeas relief. (Pet'r's Dist. Ct. Br. at 3.) He further submitted

No. 12-70031

documents in compliance with the district court's rules for habeas corpus filings. (Pet'r's Supp'l Mot.) The district court recognized that "[t]his is a petition for a writ of habeas corpus." *Green*, No. H-07-827, at 4. We are persuaded that he has filed a habeas petition, and accordingly treat it as such.[3]

## B.    Standard of Review

"We review a district court's grant of a stay of execution for abuse of discretion." *Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012) (citing *Delo v. Strokes*, 495 U.S. 320, 322 (1990)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (citations omitted). In deciding whether to grant a stay of execution, the district court was required to consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Buxton v. Collins*, 925 F.2d 816, 819 (5th Cir. 1991).

A petition for a writ of habeas corpus is governed by §§ 2254(d) and 2254(e) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See*

---

[3] The State points out that a mandate was issued in this action. To be sure, a mandate did issue in this court's decision addressing Green's previous habeas petition. But that decision dismissed Green's competency claim without prejudice "because the State of Texas ha[d] not set an execution date." *Green v. Quarterman*, 312 F. App'x 635, 641 (5th Cir. Feb. 27, 2009) (unpublished). As the Court in *Panetti* recognized, § 2254 does not refer to all "applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior § 2254 application." 551 U.S. at 944. That decision specifically held that "Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture [of] . . . a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe." *Id.* at 945. Because Green's competency claim was formerly dismissed as not ripe, the setting of his execution date presented the first time he could raise this issue in federal court. Accordingly, the district court was correct not to treat Green's motion as a successive filing. but rather as a petition for a writ of habeas corpus.

*Holland v. Anderson*, 583 F.3d 267, 271-72 (5th Cir. 2009). Section 2254(d) provides that a federal court may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the" state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is "'contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States' . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (quoting 28 U.S.C. § 2245(d)(1)) (first alteration in original). A decision "involve[s] an unreasonable application of [ ] clearly established Federal law, as determined by the Supreme Court of the United States . . . if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 412-13. "We review pure questions of law under the 'contrary to' standard of sub-section (d)(1), mixed questions of law and fact under the 'unreasonable application' standard of sub-section (d)(1), and pure questions of fact under the 'unreasonable determination of facts' standard of subsection (d)(2)." *Simmons v. Epps*, 654 F.3d 526, 534 (5th Cir. 2011) (quoting *Murphy v. Johnson*, 205 F.3d 809, 813 (5th Cir. 2000)).

Further, under § 2254(e)(1), a state court's factual findings are "presumed to be correct." This presumption may only be rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

C.    **Due Process**

No. 12-70031

The State challenges the district court's holding that Green did not receive a fair hearing because he was prevented from presenting fact witnesses from the Jester IV unit, a part of the TDCJ's mental health unit. The district court found that although Green was able to present testimony from his own witness, Dr. Mosnik, the state court's failure to allow Green to present mental health professionals to corroborate her diagnosis made this case analogous to the Supreme Court's decision in *Panetti*.[4] The district court took particular note of the fact that the State expert's assessment was based on brief meetings with Green, that the state court's decision rested largely on credibility determinations of the expert witnesses, and that the state court's opinion failed to reference the TDCJ medical records. *Green*, No. H-07-827, at 12-13.

In its appeal, the State argues that Green received a full and fair hearing as required by *Panetti*. As it did below, the State points out that Green received counsel, expert services, and the opportunity to present evidence and argument at a live hearing, including the admission of medical records. (Resp't Appellant Br. at 18, 22.) The State further asserts that the constricted schedule of Green's competency proceeding was itself the product of his own dilatory filings. (Resp't Appellant Br. at 19-20.)

Having reviewed the district court's opinion, we are persuaded that Green was not denied due process and agree with the State's argument. "Justice Powell's opinion [in *Ford v. Wainwright*, 477 U.S. 399 (1986)]constitutes 'clearly established' law for purposes of § 2254 and sets the minimum procedures a State must provide to a prisoner raising a *Ford*-based competency claim." *Panetti*, 551 U.S. at 949. In *Ford*, Justice Powell made clear that once a petitioner has made a substantial showing of incompetency, he is entitled to "an adequate means by

---

[4] Specifically, the district court held: "In granting Green's Motion for a stay, this Court finds that the state court prevented Green from presenting relevant evidence he wished to present." *Green*, No. H-07-827, at 15.

which to submit expert psychiatric evidence in response to the evidence that had been solicited by the state court" and a "fair hearing" that satisfies our standards of fundamental fairness. *Id.* at 948, 949. However, it is equally clear that, under *Ford*, "[d]ue process does not require a full trial on the merits," but only an "'opportunity to be heard.'" *Rivera v. Quarterman*, 505 F.3d 349, 358 (5th Cir. 2007) (quoting *Ford*, 477 U.S. at 424 (Powell, J., concurring in part and concurring in the judgment)); *see also Hines v. Thaler*, 456 F. App'x 357, 363 (5th Cir. 2011) (unpublished) ("[T]here is no indication that a *live* hearing, [petitioner's] key complaint with regard to the state court's procedures, is required in [a mental retardation] claim as a matter of either federal or state law."). We have further been cautioned that states "'should have substantial leeway to determine what process best balances the various interests at stake' once [they have] met the 'basic requirements' required by due process." *Panetti*, 551 U.S. at 949-50 (quoting *Ford*, 477 U.S. at 427 (Powell, J., concurring in part and concurring in the judgment)).

Here, we accept that Green made the requisite showing necessary to trigger the protections under *Ford*.[5] But we also conclude that Green received the process he was due. Green had the opportunity to develop his claim in the state proceeding. Green himself testified. The state court provided Green counsel and an expert witness. Green's expert, Dr. Mosnik, produced an expert

---

[5] The parties dispute whether the state court ordered that Green be examined by two mental health experts because the parties agreed or because the court determined that he had made a substantial showing of incompetency. The appellate court did not clarify this matter. *See Green v. State*, Nos. AP-76,374, AP-76,376, AP-76,381, 2012 WL 2400651, at *12 n.27 (Tex. Crim. App. June 27, 2012) (Price, J., concurring) ("I presume the trial court found that Green made a threshold showing to allow him to obtain expert examination under Article 46.05, Section (f), since it in fact appointed two experts."). A reading of the relevant statutory provision leads to the conclusion that the state court did, in fact, determine that Green had made a substantial threshold showing of incompetency. *See* Tex. Code Crim. Proc. art. 46.05 ("If the trial court determines that the defendant has made a substantial showing of incompetency, the court *shall* order at least two mental health experts to examine the defendant . . . ." (emphasis added)).

report. She also testified. Green also submitted over 200 pages of medical records relating to his treatment at the Jester IV unit, records which both experts reviewed. The State stipulated to the accuracy of the records and that witnesses called would have testified in accordance with those records.

The district court's holding that these procedures were deficient was based principally on its conclusion that the state court's decision to deny Green the opportunity to call witnesses, including TDCJ medical personnel, and give live testimony was closely analogous to the process found unconstitutional in *Panetti*.

We disagree that *Panetti*'s facts instruct the analysis here. Unlike the state proceeding in this case, the state court in *Panetti* "on repeated occasions conveyed information to petitioner's counsel that turned out not to be true; provided at least one significant update to the State without providing the same notice to petitioner; and failed in general to keep petitioner informed as to the opportunity, if any, he would have to present his case." 551 U.S. at 950. The *Panetti* state court also failed to provide petitioner with a competency hearing, which the Court viewed as potentially violating Texas law. *Id.* Finally, and most importantly, in *Panetti* the court based its decision solely on examinations performed by "psychiatrists *it had appointed*" and "failed to provide petitioner with an adequate opportunity to submit expert evidence in response to the report filed by the court-appointed experts." *Id.* at 951 (emphasis added).

It is thus not the case that *Panetti*'s facts are"materially indistinguishable" from those in the state proceeding here. *See Williams*, 529 U.S. at 412-13. The state court allowed Green to retain his own expert. It also considered "all of the exhibits and made the decision based upon a review of all of the evidence including testimony from [Green's] expert." (Pet'r's Dist. Ct. Ex. G.) At the competency hearing, the state court made clear that its decision was "based on all the evidence." *Green*, 2012 WL 2400651, at *2.

No. 12-70031

The conclusion that *Panetti* does not determine the outcome in this case is reinforced by comparing the facts of this case to those in *Ford*. There, the Court held the State's competency proceedings constitutionally infirm for making determinations of sanity based solely on examinations by state-appointed psychiatrists. Because the petitioner in *Ford* did not have the opportunity to offer contrary medical evidence or explain inadequacies of the state's examination, he had not been afforded the adequate protections of procedural due process. *Ford*, 477 U.S. at 416 (observing that the "most striking defect" in the state procedure was that the "person who appoints the experts . . . is the Governor, whose subordinates have been responsible for initiating every stage of the prosecution of the condemned"). Green, by contrast, was able to hire an expert who submitted a report and testified, and could respond directly to the State's evidence.

Properly understood, Green's argument is essentially that he should have been allowed more—to call more witnesses, take more time preparing his expert, and conduct a more thorough investigation into the State expert's background and credentials. But while *Ford* stated that "any procedure that precludes the prisoner or his counsel from presenting material relevant to his sanity or bars consideration of that material by the factfinder is necessarily inadequate," 477 U.S. at 414, the Court in *Panetti* made clear that it was not "address[ing] whether other procedures, such as the opportunity for discovery or for the cross-examination of witnesses, would in some cases be required under the Due Process Clause," 551 U.S. at 952. Additionally, Green was able to submit the relevant medical reports, but was simply not able, due to the shortness of time before the impending execution, to subpoena witnesses to testify as to these reports.[6]

---

[6] We also observe that Green ignores that the state court's expedited proceeding was itself motivated by the dates of Green's filings. Green did not submit a request for medical

No. 12-70031

The district court found that the state proceeding's fairness was called into doubt by the fact that the opinion heavily relied on credibility determinations of the two experts and did not refer to the TDCJ medical records.  But we only review the state court's actual decision, not the written opinion on which it is based.  *See St. Aubin v. Quarterman*, 470 F.3d 1096, 1100 (5th Cir. 2006); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc), *cert. denied*, 537 U.S. 1104 (2003) ("[W]e do not interpret AEDPA in such a way that would require a federal habeas court to order a new sentencing hearing solely because it finds the state court's written opinion unsatisfactory.  It seems clear to us that a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision." (footnote omitted)).  Thus, "our focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal*, 286 F.3d at 246; *see also Harrington v. Richter*, 131 S. Ct. 770, 784 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing that there was no reasonable basis for the state court to deny relief.").  The district court's consideration of the fact that the state court did not discuss the TDCJ records represents the very "unduly formalistic" approach this court rejected in *Neal*. 286 F.3d at 245-46.

We thus hold that the district court's conclusion— that Green was denied due process as a result of the state court's failure to allow him to call more

---

records until May 20, 2010.  His motion for appointment of counsel, retention of a mental health expert, and a competency hearing was not filed until June 1, 2010, even though he knew as early as December 16, 2009, that he was to be executed on June 30, 2010.  The state court responded on June 6, 2010.  Expert reports were then produced on June 21, 2010.  Green then filed a request for a competency hearing on June 23, 2010.  The state court promptly responded, ruling on his motion the same day, and scheduling an evidentiary hearing for June 28.

witnesses to testify about evidence already admitted as accurate and stipulated to—represented an unreasonable application of Supreme Court precedent.

Having determined that the procedures at issue were not constitutionally defective, we also reject the district court's holding that the state court made an unreasonable determination of the facts. The State's expert, Dr. Moeller, stated in his report that during the mental status examination, Green spoke at length about "improprieties in his trial and his hallucinations," but Dr. Moeller ultimately concluded, that despite "likely ha[ving] intermittent hallucinations and disorganized behaviors," "[i]t is unlikely that [Green] is suffering from schizophrenia." (Pet'r's Dist. Ct. Ex. B.)  Green himself stated that on June 30, "[t]hey'll put me on a table and put an I.V. into me and kill me . . . . because they say I killed that girl."  (Pet'r's Dist. Ct. Ex. B.)  Considering the State's stipulation to the  accuracy of the medical records, the presence of an expert on each side, and the competency hearing itself, this court concludes that the state court did not make an unreasonable determination that Green was competent, and its factual finding to that effect is thus presumptively correct. *See Patterson v. Dretke*, 370 F.3d 480, 484 (5th Cir. 2004); *see also Miller-El v. Johnson*, 261 F.3d 445, 454 (5th Cir. 2001), *rev'd on other grounds sub nom Miller-El v. Cockrell*, 537 U.S. 322 (2003) ("A state court's competency determination is a finding of fact entitled to a presumption of correctness under § 2254(d)(2).").

Green has not presented clear and convincing evidence that would serve to rebut this presumption.  Although Green identifies medical records from the Jester IV unit that diagnosed him with undifferentiated schizophrenia, these records do not demonstrate that Green lacked the rational understanding that he was to be executed for Neal's death.  Additionally, Dr. Moeller's report shows that Green spent a significant amount of time discussing flaws in his original trial.  Dr. Mosnik's report contains additional statements by Green to the effect that the police "set me up," and it evidences his understanding that "[t]hey

accused me of killing somebody and they sentenced me to deathrow but I'm not guilty." (Pet'r's Dist. Ct. Ex. A.)[7]

Accordingly, the state court's factual competency finding should remain undisturbed.

## D.    Ex Parte Communications

The State also challenges the district court's determination that "the state court's findings [were] less deserving of deference" under AEDPA for "den[ying] Green any opportunity to object or seek changes or clarifications to the findings" in the State's proposed order, which the state court requested *ex parte*, and signed verbatim.  The State argues that the state court's acceptance of the proposed order's findings was again indicative of the time constraints under which the court was functioning. (Resp't Appellant Br. at 23.)  Further, there was no need to provide Green an opportunity to submit his own findings because the state court had already rendered a judgment from the bench.  (Resp't Appellant Br. at 24.)  Additionally, Green apparently had an opportunity to object to the findings in a motion to strike he filed in the state court.  (Resp't Appellant Br. at 25.)

Ignoring the flaw inherent in the district court's determination that the state court was "less deserving of deference" under AEDPA, the district court's holding also lacks well-established support in Supreme Court precedent. *See McMurtrey v. Ryan*, 539 F.3d 1112, 1118 (9th Cir. 2008) (observing that state court factual findings are entitled to less deference under *pre-AEDPA law*).

In *Anderson v. City of Bessemer City*, the Court criticized courts' "verbatim adoption of findings of fact prepared by prevailing parties, particularly when those findings have taken the form of conclusory statements unsupported by citation to the record."  470 U.S. 564, 572 (1985).  In *Jefferson v. Upton*, the

---

[7] In another question, Green states that the murder victim's name was "Christine Neals." (Pet'r's Ex. A.)

No. 12-70031

Court again observed that "[a]lthough we have stated that a court's verbatim adoption of findings of fact prepared by prevailing parties should be treated as findings of the court, we have also criticized that practice." 130 S. Ct. 2217, 2223 (2010) (quotation omitted). But despite criticizing the practice, the Court has never found it to violate due process or to entitle a state court's decision to less deference under AEDPA. The Court has explicitly stated that it has:

> [N]ot considered the lawfulness of, nor the application of the habeas statute to, the use of such a practice where (1) a judge solicits the proposed findings *ex parte*, (2) does not provide the opposing party an opportunity to criticize the findings or to submit his own, or (3) adopts findings that contain internal evidence suggesting that the judge may not have read them.

*Id.* at 2223. Importantly, *Jefferson* was also rendered in a pre-AEDPA context. *Id.* at 2220. This court does not read the Court's statement that it had "not considered the lawfulness" of acts like those of the state court here to be an invitation to grant habeas relief on Green's claim that the *ex parte* communications rendered his competency proceeding constitutionally infirm. *See id.* at 2223; *see also Brownlee v. Haley*, 306 F.3d 1043, 1067 n.19 (11th Cir. 2002) (agreeing with district court that, although verbatim adoptions by state court of State-submitted proposed orders has been criticized, the practice has been consistently upheld where adequate evidentiary proceedings were held and the court's order was fully supported by evidence); *cf. In re Sibley*, 564 F.3d 1335, 1341 (D.C. Cir. 2009) (rejecting argument that court's adoption of court-appointed referee's report amounted to deprivation of due process).[8] It certainly does not amount to "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The district court thus

---

[8] We further note that we have ourselves upheld the practice. *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *Nichols v. Scott*, 69 F.3d 1255, 1277 (5th Cir. 1995).

erred in according the state court's decision less deference as a result of the *ex parte* request to the State for a proposed order and the subsequent adoption thereof.

## E.     Incorrect Legal Standard

The final ground for granting a stay of execution was the district court's determination that the state court twice appeared to apply incorrect legal standards.  First, the district court held that the state court appeared to apply an incorrect state standard by looking to the statutory framework contained in Article 11.071 of the Texas Code of Criminal Procedure, as opposed to that under Article 46.05.[9]  Second, the district court held that the state court applied an overly narrow definition of "rational understanding" to Green's awareness for the reasons of his execution.

---

[9] Article 11.071 of the Texas Code of Criminal Procedure "establishes the procedures for an application for a writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death."  Tex. Code Crim. Proc. art. 11.071 § 1.  Section 5 further provides that:

> If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>> (1)     the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>> (2)     by a preponderance of the evidence, but for a violation of the united States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
>> (3)     by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial . . . .

No. 12-70031

The State challenges both findings, arguing that the CCA concluded that the state court applied the correct standard and that there is no ground on which to question the state court's clarification of what standard it applied. (Resp't Appellant Br. at 29-30.) As to the state court's application of *Panetti*, the State argues that the state court's reasoning on the record supports finding that the standard was correctly applied. (Resp't Appellant Br. at 33, 35-36.)

Addressing first the state court's alleged application of the incorrect Texas law standard, the district court found it unclear what standard the state court applied. The district court was particularly alarmed by the fact that the CCA required clarification from the state court as to what standard it had applied in rendering its competency ruling. The district court appears to have been concerned about the following passage, referring to the state court judge, contained in the CCA's request for clarification to the state court:

> [The state court] further stated that it was her 'understanding we're here on the first section [of Article 11.071 § 5] because of a change in [appellant's] mental capacity from the time that [appellant was] committed in 2002 to the present.' She said again later that 'this is the subsequent writ.' Finally, in Volume 3, pages 194-95 of the report's record of the hearing, the judge explained that she 'talked about the three different types of subsequent writs just to show that [she] had an understanding of the statute[.]' On the same pages, she also stated that she followed 'the Panetti standard' and applied 'the Ford [v. Wainwright, 477 U.S. 399 (1986)] standard' and 'after applying all of those standards,' it was her ruling not to grant a stay in the case. Because some of the standards mentioned are not applicable in this instance, we order the trial judge . . . to file with the Clerk of this Court a written clarification of the standard she followed . . . .

*Ex parte Green*, 2010 Tex. Crim. App. Unpub. LEXIS 407, at *3 (alterations in original).

No. 12-70031

But the district court ignores that the CCA later determined that the state court applied the correct standard under Article 46.05. *See Green*, 2012 WL 2400651, at *2, *7.[10] In its clarification, the state court also referred to its own handwriting on Green's request for the appointment of an expert that "this exam is to determine whether defendant is competent under 45.06." At the competency hearing, the state court also explicitly stated that "I knew that we were here on the incompetence claim. I did listen to both sides. I did follow the *Panetti* standard . . . and I did also apply the *Ford* standard in this case." *Green*, 2012 WL 2400651, at *2. Unlike the district court, we do not see this as "rais[ing] questions about whether [the state court judge's] *post hoc* clarification accurately describes the standards she applied in reaching her decision." *Green*, No. H-07-827, at 14 n.8.

---

[10] Article 46.05 of the Texas Code of Criminal Procedure codifies the *Ford* standard. It provides, in relevant part, that:

(a)     A person who is incompetent to be executed may not be executed.

(f)     If the trial court determines that the defendant has made a substantial showing of incompetency, the court shall order at least two mental health experts to examine the defendant using the standard described by Subsection (h) to determine whether the defendant is incompetent to be executed.

(g)     If the trial court does not determine that the defendant has made a substantial showing of incompetency, the court shall deny the motion and may set an execution date as otherwise provided by law.

(h)     A defendant is incompetent to be executed if the defendant does not understand:

(1)     that he or she is to be executed and that the execution is imminent; and

(2)     the reason he or she is being executed . . . .

(k)     The trial court shall determine whether, on the basis of reports provided under Subsection (i), the motion, any attached documents, any responsive pleadings, and any evidence introduced in the final competency hearing, the defendant has established by a preponderance of the evidence that the defendant is incompetent to be executed.

19

No. 12-70031

After reviewing the state court's bench ruling, we are further persuaded that it applied the correct standard. The court stated:

> [F]or the record, I'm going to state that the most compelling evidence of all was from your own expert . . . which shows that you know you are to be executed by the State, you know you are convicted of killing the victim . . . you know the execution date, and then you proclaimed your innocence which shows a rational understanding of your imminent date and you know the charges that were against you.

*Green*, 2012 WL 2400651, at *2 (second alteration in original).

This closely follows the requirements laid out in *Ford* and *Panetti* that a prisoner: 1) "know the fact of [his] impending execution and the reason for it," *Ford*, 477 U.S. at 422 (Powell, J., concurring in part and concurring in the judgment), and 2) "[have a] rational understanding of the reason for the execution," *Panetti*, 551 U.S. at 958. We conclude that the state court applied the correct standard and the district court abused its discretion in finding otherwise. *See Green*, 2012 WL 2400651, at *7 (noting that state court correctly applied Article 46.05).

We arrive at the same conclusion as to the state court's application of the "rational understanding" requirement under *Panetti*. The district court draws a comparison between Green's statement that he believed he was to be executed "as a result of the war between the 'good and evil personalities constantly fighting for control of his body in order to kill him'" and the *Panetti* petitioner's belief that the reasons for his execution were a sham and that he was actually to be executed as a result of "spiritual warfare" between demons and God. *Green*, No. H-07-827, at 15.

But the petitioner in *Panetti* also believed that "the stated reason [for his execution] is a 'sham' and the State in truth wants to execute him 'to stop him from preaching.'" 551 U.S. at 955. On that petitioner's appeal, this court had

20

No. 12-70031

also restricted its analysis to "whether [the] prisoner is aware that he [is] going to be executed and why he [is] going to be executed." *Id.* at 956 (quotation marks omitted). Here, by contrast, the state court made a specific finding as to Green's rational understanding. *Green*, 2012 WL 2400651, at *2. As with other factual determinations, the district court could only reject that finding on a showing of clear and convincing evidence. We do not find any indication in the state court's decision that its interpretation of what was required for a "rational understanding" was "too narrow," *Green*, No. H-07-827, at 13 n.7, and conclude that a stay was not warranted on this ground.

## F.    Additional Relief

In his petition to the district court, Green alleged that "[t]he supposed functional abilities and fund of knowledge that led the convicting court to find [him] competent . . . have deteriorated since Moeller and the convicting court evaluated the evidence in this case," and attached an affidavit by a fellow death row inmate attesting to Green's mental instability. (Pet'r's Dist. Ct. Br. at 44-45.) The State responded that the only way Green could present new evidence would be to file a subsequent motion in state court pursuant to Article 46.05(e) which provides:

> If a defendant is determined to have previously filed a motion under this article, and has previously been determined to be competent to be executed, the previous adjudication creates a presumption of competency and the defendant is not entitled to a hearing on the subsequent motion filed under this article, unless the defendant makes a prima facie showing of a substantial change in circumstances sufficient to raise a significant question as to the defendant's competency to be executed at the time of filing the subsequent motion under this article.

Tex. Code Crim. Proc. art. 46.05(e). The district court rejected the State's argument, finding instead that, having found that the state proceeding

21

prevented Green from submitting various pieces of evidence—the testimony of fact witnesses—it would be circular to now prohibit Green from introducing new evidence on the basis that he should have submitted it previously.

On appeal, the State argues that any additional factual development, insofar as it relates to the 2010 competency finding, is foreclosed by *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). (Resp't Appellant Br. at 12-13.) We agree. The Court in *Pinholster* made clear that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court" because "[s]tate-court decisions are measured against [the Supreme Court's] precedents as of 'the time the state court renders its decision.'" *Id.* at 1399 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). The Court further reasoned that "[i]t would be contrary to [the requirement that prisoners exhaust their state remedies before filing for federal habeas relief] to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*." *Id.*

While it appears that the district court was referring to testimony by the fact witnesses, this reasoning applies equally to them and the affidavit of Green's fellow death row inmate. Having found that the state proceeding was not constitutionally deficient, we see no basis on which to permit Green to introduce new evidence.

In addition to attacking the legality of his 2010 competency proceedings and his state court appeal, Green argues that his mental condition has deteriorated since 2010 and he is currently incompetent. He alleges that he suffers from schizophrenia, experiences hallucinations, and operates under the delusion that he "was convicted in a bizarre trial permeated by sexual misconduct in open court." To corroborate this allegation, he offers the fellow death row inmate's sworn statement that Green's capabilities have markedly

deteriorated from the time he was examined in 2010. Green thus seeks to "develop his competency claim in federal proceedings," and further contends that he must "be given the opportunity and expert resources necessary to properly present and explain the significance of his condition in a federal [habeas petition]."

In effect, Green attempts to turn the instant federal habeas proceedings into a *Ford* hearing. Significantly, he does not contest the availability of further competency proceedings in state court. Tex. Code Crim. Proc. art. 46.05(e). Nor does he argue that the procedure available to him in state court is constitutionally infirm, or that the factual predicate for his new competency claim was unavailable until now. In these circumstances, he cannot raise this claim for the first time in federal court.

Under the Supreme Court's framework in *Rhines v. Weber*, 544 U.S. 269 (2005), a district court may, in its discretion, stay and hold in abeyance federal habeas proceedings to permit a state prisoner to marshal unexhausted claims through state court. Were we to construe Green's new competency claim as an "unexhausted claim" within the meaning of *Rhines*, this would permit a death row inmate with a new competency claim (colorable or not) to come first to a federal court to obtain a stay of execution even though adequate state procedures are available to determine his competency. We refuse to do so.

We think there is an important distinction between the claim of incompetency that was presented to the state trial court in 2010 and a claim that the petitioner's mental condition today, on the eve of his execution, has deteriorated substantially, such that he is currently incompetent to be executed. The latter claim does not undermine the state courts' conclusion that he was competent to be executed in 2010, as would potentially be the case with what we consider to be an "unexhausted claim." It is simply a new claim. It is one that has not been presented to the state court system, even though state law provides

a mechanism for presenting such a claim. Tex. Code Crim. Proc. art. 46.05. We are unwilling to treat this new claim as an unexhausted claim within the meaning of *Rhines*, which would permit the district court to stay his execution pending the state court disposition of this new claim. We are even more unwilling to allow the district court to entertain his request for "expert resources." Instead, we are convinced that Green's federal court proceedings should come to an end with the disposition of the federal habeas claim relating to the 2010 competency hearing, and any request for a stay of execution on competency grounds should be directed by Green to the state courts, perhaps ancillary to the proceedings contemplated by Article 46.05(e).

## III.  CONCLUSION

For the aforementioned reasons, the State's motion to vacate the stay of execution is GRANTED, and the order staying the execution in this case is hereby VACATED.   We remand this matter to the district court with instructions to dismiss Green's petition with prejudice except for his claim that he is currently incompetent, which should be dismissed without prejudice.

24

No. 12-70031

OWEN, concurring.

I concur fully in the court's opinion.

I note that Green does not explicitly assert a claim that he is entitled to a new hearing because of changes in circumstances since the competency hearing in 2010. He essentially discusses facts that came into existence after the 2010 hearing as tangential support for his argument that he was and continues to be incompetent. It is far from clear that Green has raised a claim separate and apart from his challenge to the 2010 proceedings that would necessitate consideration of whether such a claim, if any, is "unexhausted" within the meaning of AEDPA.

In any event, AEDPA's exhaustion requirements do not appear to apply to a claim that Green is entitled to a new hearing based on conditions that have changed since 2010, if indeed Green has made such an assertion. My understanding of the Supreme Court's decision in *Panetti v. Quarterman*[1] is that a defendant subject to a sentence of death could initiate more than one competency proceeding in a state court over time, and habeas petitions separately challenging each state-court competency proceeding would not necessarily be considered successive under AEDPA. Each proceeding might depend on the facts that obtained at the time of the competency hearing, particularly when relatively long periods of time had passed between adjudications of competency. Additionally, a determination that a defendant was incompetent to be executed would not vacate the sentence of death. The sentence would remain, but, as a constitutional matter, it could not be enforced unless and until the defendant became competent to be executed.

---

[1] 551 U.S. 930 (2007).

25

These differences distinguish competency-to-be-executed proceedings from the types of proceedings at issue in *Rose v. Lundy*[2] and *Rhines v. Weber*.[3] In *Lundy*, which predated AEDPA by fourteen years, the Supreme Court held that "federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims."[4] The Supreme Court explained that the underlying concern in allowing federal courts to adjudicate "mixed" petitions containing exhausted and unexhausted claims was that "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation."[5] But allowing a federal court to consider the merits of a habeas proceeding in which a state has adjudicated the competency of a defendant to be executed at a particular point in time does not overturn a conviction. Competency may still be at issue in future state court proceedings. Each competency proceeding may well be a discrete proceeding that is largely if not entirely independent of the outcome of prior incompetency proceedings. The concept of "exhaustion" under the law prior to AEDPA and under AEDPA therefore does not fit such claims, at least not in all circumstances. A decision by a federal district court that a defendant is or is not entitled to habeas relief in a competency-to-be-executed proceeding does not necessarily resolve, and in many cases will not resolve, whether, over the course of time, circumstances have changed and the defendant is no longer competent or conversely, has become competent. Perhaps most importantly, it would make no sense, and would defeat the purpose of habeas proceedings, to wait until a

---

[2] 455 U.S. 509 (1982).

[3] 544 U.S. 269 (2005).

[4] *Rhines*, 544 U.S. at 273.

[5] *Lundy*, 455 U.S. at 518 (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)).

series of competency hearings in state court had been concluded before a federal court addressed the merits of any of them. The potential for future, "unexhausted" claims of competency-to-be-executed claims would loom.

I note that Green has not once but twice waited until the eleventh hour to raise claims that he is incompetent. The evidence in the affidavit from another inmate regarding Green's behavior after 2010 was known and available to Green many, many months before he sought relief in the federal district court on September 28, 2012. If Green is in fact asserting that he should receive a new hearing based on developments after 2010, then this claim should not be considered by this court due to its last-minute nature.

I also write to address whether the state courts properly applied the competency standard discussed in *Panetti*. Green, like the defendant in *Panetti*, suffers from delusions. The Supreme Court said in *Panetti* that the "legal inquiry concerns whether these delusions can be said to render him incompetent."[6] The Court further explained that "the execution of an insane person simply offends humanity" and that "it is uncharitable to dispatch an offender into another world, when he is not of a capacity to fit himself for it."[7] The Supreme Court admonished that the lower courts should have considered "Petitioner's submission . . . that he suffers from a severe, documented mental illness that is the source of gross delusions preventing him from comprehending the meaning and purpose of the punishment to which he has been sentenced."[8] In Green's competency proceedings, the state courts did consider this argument.

---

[6] *Panetti*, 551 U.S. at 956.

[7] *Id*. at 958 (quoting *Ford v. Wainwright*, 477 U.S. 399, 407 (1986)).

[8] *Id*. at 960.

No. 12-70031

The Texas Court of Criminal Appeals considered and cited the state trial court's factual findings in this regard.[9] The state trial court referred to, among other evidence, Green's own testimony at the competency hearing and Green's statements to his expert witness. The trial court specifically noted that Green was able to name his trial counsel and his current attorney, as well as the "first, second, and third attorneys" in his case. The trial court observed, "You knew that you had the right to have trial counsel and appellate counsel, and I further find that you appreciated the adversarial nature of the trial and proceedings." Green told his expert witness during her assessment of him that he had been imprisoned for killing Christine Neal, specifically naming the victim, but denying his guilt. He told his expert when asked if he understood what "competency to be executed" means that "You evaluate me to see if I'm smart enough to die I guess." He then said when asked if he knew that he was going to be executed, "I hope not." He said that the date of his execution was "the 30th of this month" and that this date was "18-19 days" away. When asked if he knew the reason for the execution, he said, "They accused me of killing somebody and they sentenced me to deathrow but I'm not guilty." This is evidence that Green possessed considerable cognitive ability. It is also evidence that he connected the penalty of death as punishment for a crime of murder and that he believed that morally, he should not be put to death for such a crime because he was not guilty of the crime. His detailed complaints regarding the fairness of his trial for the murder of Christine Neal indicate that he appreciated the immorality in convicting someone of a crime when the trial was procedurally flawed. He expressed "hope" that he would not be put to death, maintaining his innocence and relying on errors allegedly committed during his trial.

---

[9] *Green v. State*, Nos. AP-76,374, AP-76,376, AP-76,381, 2012 WL 2400651 (Tex. Crim. App. Jun. 27, 2012).

No. 12-70031

The Texas Court of Criminal Appeals recognized that the "record contains evidence that would support a finding of competency *or* incompetency."[10] It then concluded that "there was sufficient evidence here to support the trial court's ruling; we cannot find that its determination was outside the zone of reasonable disagreement."[11]  This was a correct assessment.  The state court's application of the law to the facts in this case was not unreasonable.

Accordingly, I concur.

---

[10] *Id.* at *7.

[11] *Id.*