# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 20-70009

————

United States Court of Appeals
Fifth Circuit

**FILED**
June 12, 2020

Lyle W. Cayce
Clerk

RUBEN GUTIERREZ,

   Plaintiff - Appellee

v.

LUIS V. SAENZ; FELIX SAUCEDA, Chief, Brownsville Police Department; BRYAN COLLIER, EXECUTIVE DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE; LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION; BILLY LEWIS, Warden, Texas Department of Criminal Justice, Huntsville Unit,

   Defendants - Appellants

————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:19-CV-185

————

Before SOUTHWICK, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM:\*

On June 9, 2020, the district court granted Texas inmate Ruben Gutierrez's stay of execution.  The Texas Attorney General's Office has

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 20-70009

appealed and moves this court to vacate the stay so that Gutierrez may be executed as scheduled on June 16, 2020. The State's motion is GRANTED.

FACTUAL AND PROCEDURAL BACKGROUND

In 1999, Gutierrez was convicted of the murder of Escolastica Harrison and was sentenced to death. Details of the offense are set out in *Gutierrez v. Stephens*, 590 F. App'x 371, 373 (5th Cir. 2014). Important for one of our issues is that there was evidence that Gutierrez was one of two men inside the decedent's home when she was murdered, and Gutierrez could be found guilty of capital murder even if he was only an accomplice. *Id.* at 373. Gutierrez's conviction was affirmed on direct appeal. *Gutierrez v. State*, No. AP-73,462 (Tex. Crim. App. Jan. 16, 2002) (not designated for publication). The Court of Criminal Appeals' most recent denial of post-conviction relief was on June 12, 2020, when it rejected an application to file a second subsequent writ application and also denied a stay of execution. *Ex parte Gutierrez*, No. WR-59,552-05 (Tex. Crim. App. June 12, 2020) (not designated for publication).

On September 26, 2019, Gutierrez filed a complaint under 42 U.S.C. § 1983, in the United States District Court for the Southern District of Texas. He sought DNA testing of certain evidence. The operative amended complaint was filed on April 22, 2020. He challenged the constitutionality of Chapter 64 of the Texas Code of Criminal Procedure, and of the protocols under which it was applied. He also sought to override the Texas Department of Criminal Justice's policy refusing to allow chaplains to accompany inmates into the execution chamber itself. The State filed a motion to dismiss, which was granted only in part. That court later entered a stay of execution. The State appealed.

2

No. 20-70009

DISCUSSION

In granting the stay, the district court concluded that Gutierrez made a showing of likelihood of success on the merits "of at least one of his DNA or [chaplain] claims." We review a district court's grant of a stay of execution for abuse of discretion. *Sepulvado v. Jindal*, 729 F.3d 413, 420 (5th Cir. 2013).

When deciding whether to stay an execution, the district court is to consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Green v. Thaler*, 699 F.3d 404, 411 (5th Cir. 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The first two factors are the most significant for deciding a stay. *Nken*, 556 U.S. at 434.

On appeal, the State argues the district court abused its discretion in granting a stay because Gutierrez's DNA claims are time-barred and meritless and Gutierrez's chaplain claims are meritless.

## I.    DNA claims

The parties dispute whether Gutierrez's DNA claims are timely. We need not answer that question because of our conclusion that the DNA claims are unlikely to succeed on the merits.

There is no constitutional right for a convicted person to obtain evidence for postconviction DNA testing, but a right to obtain DNA testing may be created by state law. *District Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 67–73 (2009). Because Texas has created such a right, its procedures for a convicted defendant to obtain this right must satisfy due process. *Id.* at 72–74.

No. 20-70009

Texas's procedure for inmates to obtain DNA testing includes a requirement that they show by a preponderance of the evidence that they would not have been convicted if exculpatory results had been obtained through DNA testing. TEX. CODE CRIM. P. ch. 64.03(a)(2)(A). Gutierrez argues Chapter 64 is facially violative of due process. According to Gutierrez, this preponderance-of-the-evidence standard is "unusually and unreasonably high." He argues the materiality standard should be lower. Although the Court in *Osborne* did not resolve the appropriate materiality standard, it did approve of Alaska's postconviction procedures, as applied to DNA testing, requiring that defendants seeking access to DNA evidence must show the evidence is "sufficiently material." *Osborne*, 557 U.S. at 70. States use varying materiality standards. We see no constitutionally relevant distinction between what was approved in *Osborne* — sufficiently material — and requiring an inmate to show materiality by a preponderance of the evidence.

Gutierrez further argues that Chapter 64 is fundamentally unfair as applied by the Court of Criminal Appeals. According to Gutierrez, that court interprets Chapter 64 to preclude DNA testing if the proposed testing would simply "muddy the waters." Gutierrez contends this interpretation heightens the fundamental unfairness of the statutory standard itself. Yet the Supreme Court allowed denial of DNA testing unless the results were likely to be "conclusive." *Id.* at 65, 70.

The problem for Gutierrez is that he was convicted without jurors needing to decide whether he was the actual murderer or an accomplice. He confessed to being inside the home. The jury was permitted to find Gutierrez guilty "of capital murder if, among other things, it found that appellant 'acting alone or as a party' with the accomplice intentionally caused the victim's death." *Gutierrez*, 590 F. App'x at 374. A search for DNA on the victim's clothing and elsewhere would not reasonably lead to evidence that would

4

No. 20-70009

exclude Gutierrez as an accomplice. In his briefing before this court, he wholly failed to show how the DNA testing he requests would be "sufficiently material" to negate his guilt thus justifying the pursuit of DNA testing at this late date. Therefore, because Gutierrez has not shown by a preponderance of the evidence that he would not have been convicted if exculpatory results were obtained, he cannot prevail.

Gutierrez failed to show that the Court of Criminal Appeals' application of Chapter 64 as to him was fundamentally unfair. We conclude that Chapter 64 both facially and as applied by the Court of Criminal Appeals comports with the Supreme Court's decision in *Osborne*. Consequently, this claim is likely to fail on the merits and cannot justify a stay of execution.

## II.    *Chaplain claims*

Gutierrez challenges the TDCJ's policy disallowing chaplains and spiritual advisors in the execution room itself. The policy, revised in 2019, provides that on the day of execution the death row inmate may visit with a TDCJ chaplain and a minister or spiritual advisor "who has the appropriate credentials," but chaplains and spiritual advisors are not permitted in the execution chamber. As part of the 2019 revised execution policy, "[o]nly TDCJ security personnel shall be permitted in the execution chamber." According to Gutierrez, this policy violates his rights under the Establishment Clause, the Free Exercise Clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). We will follow that order in our analysis.

### A.    *Establishment Clause claim*

In his complaint, Gutierrez argues TDCJ's execution policy prohibiting a chaplain from being present in the execution chamber violates the Establishment Clause because it is not neutral between religion and non-religion and inhibits the practice of religious beliefs.

5

No. 20-70009

The parties do not on agree as to which constitutional standard is applicable. Gutierrez argues this policy should be reviewed under strict scrutiny. The State argues we should apply a test of reasonableness derived from *Turner v. Safley*, 482 U.S. 78 (1987). In *Turner*, the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. The regulations reviewed by the *Turner* Court included restrictions on inmate-to-inmate mail and inmates' right to marry. *Id.* at 81. We conclude *Turner* applies.

Under *Turner*, we consider:

> (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether there exist "alternative means of exercising the fundamental right that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there is an "absence of ready alternatives" to the regulation in question.

*Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004) (quoting *Turner*, 482 U.S. at 89–90). Gutierrez fails to make a strong showing of a likelihood of success in establishing that TDCJ's execution policy is not "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

B. *Free Exercise Clause claim*

Gutierrez's claim that TDCJ's execution policy violates the Free Exercise Clause is largely a recitation of his Establishment Clause claim. Again, Gutierrez argues TDCJ's policy cannot survive strict scrutiny. Circuit precedent, as the district court agreed in this case, requires application of *Turner* to a Free Exercise claim. *See Brown*, 929 F.3d at 232–42. We have identified the factors in our discussion of the Establishment Clause, and they similarly prevent success for Gutierrez's Free Exercise claim.

6

No. 20-70009

Among Gutierrez's arguments is that the prior policy, which would satisfy his interest, allowed only Christian or Muslim spiritual advisors into the execution chamber. *See Murphy v. Collier*, 139 S. Ct. 1475 (2019). There was a suggestion by one justice that what would end the Equal Protection claim would be to prohibit any ministers or religious advisors into the execution chamber itself but permit all to be in the viewing room. *Id.* at 1475–76 (Kavanaugh, J., concurring to grant of a stay). The TDCJ decided to take that advice. One justice's views are not precedent, but we conclude that the concurring opinion made a valid appraisal of the issue. Gutierrez is unlikely to establish that TDCJ's execution policy is not "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

Having denied the legal argument, we acknowledge the strong religious arguments made by Gutierrez and also in an amicus brief from the Texas Catholic Conference of Bishops. We can apply only the legal standards and have concluded that what the State has done here satisfies those.

C.   *RLUIPA claim*

The RLUIPA provides that the government shall not "impose a substantial burden" on an inmate's religious exercise, unless the government demonstrates that imposition of the burden on that person "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Gutierrez bears the burden of demonstrating the policy imposes a "substantial burden" on his religious exercise. *Adkins*, 393 F.3d at 567.

Gutierrez argues that TDCJ's policy disallowing chaplains and spiritual advisors in the execution chambers is a substantial burden on his religious exercise because the policy prohibits him from receiving a Christian chaplain's guidance just before death. Yet Gutierrez has failed to show that this policy

7

"creates a 'substantial burden' on a religious exercise [that] truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Id.* at 570. Perhaps Gutierrez is being denied the final measure of spiritual comfort that might be available. As important as that is, government action does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from enjoying some benefit that is not otherwise generally available. *Id.*

We conclude that Gutierrez does not have a reasonable likelihood of success on any of his First Amendment claims or under RLUIPA.

## III.   *Remaining stay factors*

Because Gutierrez fails to show likelihood of success on the merits as to his DNA and chaplain claims, he fails to satisfy the first factor warranting a stay of execution. As to the second factor, the possibility of irreparable injury in a capital case weighs heavily in the movant's favor. *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982). Nevertheless, there comes a time when the legal issues "have been sufficiently litigated and relitigated so that the law must be allowed to run its course." *Id.* Given the extent of Gutierrez's litigation and re-litigation of claims in both state and federal court, we conclude he has not made a showing of irreparable injury. Because the first two, and most critical factors do not weigh in Gutierrez's favor, and neither do the remaining two, we conclude the district court abused its discretion in granting Gutierrez's motion to stay his execution.

The motion to vacate the stay of execution is GRANTED.